SILVER CITY GOLD AND SILVER MINING COM-
PANY, A CORPORATION, RESPONDENT, v. MARK
K. LOWRY, DELUCIOUS L. DE WITT, AND
JAMES G. SMITH, APPELLANTS.

MINING CLAIM — PROTEST AND ADVERSE SUIT — LOSS OF DISCOVERY
POINT — PATENT OF JUNIOR LOCATION — NEW DISCOVERY BEFORE
PATENT — RE-LOCATION AFTER LOSS OF ORIGINAL DISCOVERY —
EFFECT OF. MINING CLAIM — OUSTER OF LESSOR BY LESSEES IN
POSSESSION — FORFEITURE OF LESSEES' RIGHTS UNDER LEASE.
ADVERSE SUIT — JURISDICTION ONCE OBTAINED FULL RELIEF
MAY BE GRANTED.

1. *Mining Claim —Protest and Adverse Suit — Loss of Discovery Point—
Patent of Junior Location — New Discovery Before Patent — Re-
location After Loss of Original Discovery — Effect of.*

    Where the original discovery of a vein, upon which a mining
    location is based, is included within the surface boundaries
    of a junior location, which goes to patent without protest
    from the owners of the prior location, but before such patent
    a new discovery has been made on the prior location, without
    the boundaries of the junior location as patented, and within
    the surface boundaries of the prior location as originally
    located, and development work is being there prosecuted in
    good faith by the owners of the prior location, their claim is
    valid and holds as to all ground not included in the patent of
    the junior location, notwithstanding the loss of the original
    discovery.

2. *Mining Claim — Ouster of Lessor by Lessees in Possession — Forfeit-
ure of Lessees' Rights under Lease.*

    Lessees of mining ground in possession who oust their lessor by
    relocating the ground and setting up an adverse title in them-
    selves, forfeit all rights under the lease.

3. *Adverse Suit — Jurisdiction Once Obtained Full Relief May Be
Granted.*

    A court having obtained jurisdiction of all parties to an adverse

suit for possession of a mining claim, may grant full relief and restore possession to the party entitled thereto.

(Decided April 28, 1899.)

(Note.)   Appealed to U. S. Supreme Court, May·13, 1899.

Appeal from the Fifth District Court, Juab County, Hon. E. V. Higgins, *Judge.*

Action by plaintiff in aid of a protest and adverse claim to determine the ownership and right of possession of certain mining property.

From a judgment for plaintiff defendants appeal. *Affirmed.*

*Messrs. Powers, Straup & Lippman,* and *Messrs. Brown & Henderson,* for appellants.

The failure to file an adverse claim against the Evening Star was a conclusive admission on the part of the owners of the Wheeler that the Wheeler location was invalid and void.   The patenting of the point of location and discovery by the Evening Star rendered the Wheeler location utterly void.   As the discovered lode must lie within the limits of the location which is made by reason of it, if the title to the discovery fails, so must the location which rests upon it.   *Gwillim* v. *Donnellan,* 115 U. S., 45, 50; see also *Moyle* v. *Bullene,* 44 Pac., 71.

A prior discovery is necessary to a valid location.   No discovery made after a location would make that location valid.   *Upton* v. *Larkin,* 5 Mont., 600; 6 Pac. 66, 7 Mont., 449; 17 Pac., 728; *Armstrong et al.* v. *Lower et al.,* 6 Col., 393; (15 Morrison Mining Rep., 631); *Armstrong*

*et al.* v. *Lower et al.*, 6 Col., 581 (15 Morrison Mining Rep., 458).

The case of *Golden Terra Mining Co.* v. *Mahler*, 4 Mor. M. Rep., 390–399 arrives at the same conclusion.

The discovery must be made within the limits of the location as it is ultimately marked upon the ground. A location based upon a discovery made within the limits of another existing and valid location is void. Lindley on Mines, Vol. 1, Sec. 337, p. 441 and cases there cited; *Cheesman* v. *Shreeve*, 40 Fed., 787; *Michael* v. *Mills*, 22 Col., 439, 45 Pac., 429.

Where a person who has located a mining claim permits an adjoining occupant to patent that part of his claim on which is located his discovery shaft, the remaining portion thereof reverts to the condition of public lands, and is relocatable; and such rule applies, though the patentee made his location after such person. *Miller et al.* v. *Girard et al.*, 3 Colo; Court Appeals, 278; 33 Pac., 69.

We desire to call particular attention to the case of *Girard et al.* v. *Carson et al.*, 44 Pac., 508; 22 Colo., 345.

A discovery is something more than merely seeing ore. It is a discovery made with reference to the vein; it must be rock in place and there must be a formality connected with it — that is, a stake must be placed there; and if the local laws require a notice, it must be placed at the point of discovery. No discovery can be made unless it conforms literally to the rules of the mining district where it is situated. A compliance with the local regulations and customs is necessary to the validity of the location. *Becker* v. *Pugh*, 9 Colo., 589; 13 Pac., 906; 15 Mor. Min. Rep., 304; *The Con. Republican Mountain M. Co.* v. *Lebanon M. Co.*, 15 Mor. Mining Rep., 490; *Gleeson*

v. *Martin White M. Co.*, 13 Nev., 443; *King* v. *Edwards*, 1 Mont., 235; *Sullivan* v. *Hense*, 2 Col., 424.

Plaintiffs have sought to rely upon possession, but possession of the public lands and mining claims unless accompanied by a valid location is not a good possession. It may be sufficient against mere intruders and trespassers, but it is not good against a person who comes and makes a proper location. Possession does not prevent another person from entering and making a proper location. *Noyes et al.* v. *Black et al.*, 2 Pac., 769; *Horsewell* v. *Ruiz*, 7 Pac., 197; 67 Cal., 111; *Richards* v. *Dower*, 22 Pac., 304, 307; *Becker* v. *Pugh, supra; Mc-Caig* v. *Bryan*, 10 Colo., 309, 15 Pac., 413; *Hopkins* v. *Noyes*, 4 Mont., 550; 3 Pac., 280; *Garfield M. & M. Co.*, v. *Hammer*, 6 Mont., 53; 8 Pac., 153; *Gleeson* v. *Martin White M. Co.*, 9 Mor., 429; 13 Nev., 442; *Garthe* v. *Hart*, 73 Cal., 541; 15 Pac., 93; Lindley on Mines, Vol. 1, Sec. 218, p. 265.

The respondent claimed that the existence of the lease prevented these appellants from making any location on the ground that they were stopped to deny their landlord's title, but that estoppel does not apply to the case where a landlord's title has been extinguished. Bigelow on Estoppel, 517.

Nor does the opinion of the Judge proceed upon that basis. He decides this case not on the law of Landlord and Tenant, but he held that this location was a valid and proper one. It was stated on the argument, and will be again, that the location made by the tenant was for the benefit of the landlord. If true, the respondent is mistaken in its remedy which would be to bring an action in equity to compel the owners of the Clarissa to deed it to the respondent on the ground that the appellants were trustees of the respondent. It could not tend to revive

the Wheeler when the judgment was rendered in favor of the Evening Star against the Wheeler. That was a judgment declaring void, and forfeiting all the rights of the owners of, the Wheeler. Once being void, it never could be revived again. Nothing but a new discovery could make a new claim. *Belk* v. *Meagher*, 194 U. S., 279; *Upton* v. *Larkin*, 5 Mont., 600; *Upton* v. *Larkin*, 7 Mont., 449; *Kendall* v. *San Juan S. M. Co.*, 9 Colo., 349; 12 Pac., 198.

*Messrs. Varian & Varian*, and *Messrs. Williams, Van Cott & Sutherland*, for respondent.

These appellants, being tenants in possession under a lease and contract with respondent, are not permitted to relocate and hold the ground against respondent upon the assumption that its title had failed. Lindley on Mines, Vol. 2, Sec. 688; Vol. 1, Sec. 62; *Belk* v. *Meagher*, 104 U. S., 287; *U. S. R. S.*, Sec. 2332; *Harris* v. *Equator Co.*, 8 Fed., 863; *420 Mg. Co.*, v. *Bullion*, 3 Sawy., 644; 9 Fed. Cases, No. 4989; *Kinney* v. *Con. Va. Co.*, 4 Sawy., 383; 14 Fed. Cases, No. 7827; *Altoona Co.* v. *Integral Co.*, 114 Cal., 105; *Mc Cowan* v. *Mc Lay*, 16 Mont., 234; 40 Pac., 602.

In this case an *estoppel in pais* springs from the occupation delivered by the owner, and not from the writing. Bigelow Est., 4 Ed., 452; *Hussman* v. *Wilke*, 50 Cal., 253; *Varnum* v. *Smith*, 15 N. Y., 331.

The estoppel continues as long as the possession continues, though the contract of lease is void. Bigelow Est., 454.

Even when the tenant disclaims, the effect is only to set the statute of limitations in motion. He can not set up his title in an action brought by the lessor before the expiration of the period of the statute of limitations. Bigelow, 463, 477; *Wilson* v. *Watkins*, 3 Pet., 43.

The loss of the particular area of surface ground, which embraced the place of the original discovery, did not invalidate the claim, or restore the ground to the public domain; there still remained a discovery within the boundaries of the claim.

It is even true that a discovery of a vein made after location makes good the claim where the rights of others have not intervened. Cayuga Lode, 5 Land Decisions, 703; In re Hoagland, 1 L. D., 593; Spur Lode, 4 L. D., 160; Lindley Mines, Secs. 335–453; *Jupiter Mfg. Co.* v. *Bodie Co.*, 11 Fed., 666; Morrison's Mfg. Rights, 9th ed., 28; *Harrington* v. *Chambers*, 3 Utah, 115, 116; *North Noonday Co.*, v. *Orient Co.*, 1 Fed., 522; *Patcher* v. *Keeley*, 14 Pac., p. 353.

It is argued that no new notice of location was posted, and for that reason the location has failed. Now in the first place, the requirement of posting notice is in the local rule, not in the statute. There is no penalty or forfeiture provided. It never was intended to make a non-compliance with this regulation a self-executing cause of forfeiture. Such a rule would probably be held to be unreasonable. However that may be, unless the rule itself provides a penalty, none will be imposed. *Mc Garrity* v. *Byington*, 12 Cal., 431; *Bell* v. *Bed Rock Co.*, 36 Cal., 219; Jupiter Mg. Co., 11 Fed., 680; Lindley, Sec. 274; *Johnson* v. *McLaughlin* (Ariz.), 4 Pac., 132; *English* v. *Johnson*, 17 Cal., 117; *Flaherty* v. *Gwin*, 1 Dak., 511.

The court found and decreed that the plaintiff is the owner of the premises. It is its duty to grant complete relief, having acquired jurisdiction. The power to make its decrees effectual is inherent in a court of equity. It is not obliged to send a party to a court of law to get possession which it has decided he is entitled to. *Harding* v. *Fuller* (Ill.), 30 N. E., 1055; *Oberein* v. *Wells*, 45 N.

E., 297; *Gormley* v. *Clark*, 134 U. S., 350; Pomeroy Eq. Jur., Vol. 1, 1177.

Baskin, J.

The defendants having on the 14th day of January, 1898, made application in the Land Office at Salt Lake City for patent of the Little Clarissa mining claim, the plaintiff, within the sixty days' period of the publication of the notice of said application, filed a protest and adverse claim, based upon the alleged ownership of the Wheeler mining claim, and within thirty days thereafter instituted this suit to determine the ownership and right to the possession of the premises in dispute. The prayer of the complaint was, that the plaintiff be declared to be the owner, and entitled to the possession of the disputed premises; that its title to the same be quieted; that the plaintiff be put in possession thereof, and that the Little Clarissa mining claim, so far as it conflicts with the Wheeler mining claim, be declared fraudulent and void. At the hearing a decree was entered in conformity with the prayer of the complaint.

The Wheeler mining claim was located January 1, 1889. On the 8th day of February, 1897, the plaintiff leased said claim to the defendants Lowry and De Witt for a period of eighteen months. The lease of said claim, among other covenants, contained the following: That the lessees should sink the main shaft a depth of six feet each month during the life of the lease (this shaft is at the point designated hereinafter as the new discovery); that said lessees should not allow or permit any miner's or other liens to be filed against said mining claim, nor suffer to be done any act or thing whatsoever, whereby or means whereof the title to said mining claim should be, in any manner or way, encumbered, and that upon a failure

to comply with any or all of the covenants of the lease the lessees should forfeit their rights under the same.

On the 5th day of June, 1897, the owners of the Evening Star claim made application for a patent for the same, and after taking the necessary steps required by the mining law, the same was entered in the land office. No protest was made to said application for a patent to the said Evening Star claim.

The original discovery point of the Wheeler claim lies within the exterior boundaries of the Evening Star claim as entered, and two and one-fourth feet from the southwest side line of said claim. On the day of the expiration of the sixty days' publication of the notice of application for said patent, to wit: On the 14th day of August, 1897, the said lessees and their co-defendants who were at the time engaged in working the Wheeler mining claim, as servants of said lessees, with full knowledge of said lease, and that said lessees were in possession under the same, located the Little Clarissa mining claim which embraces the Wheeler claim, its new discovery point, and all of its workings and improvements.

At the trial the defendants took fifty-two exceptions on which errors are assigned, but as only a few of the alleged grounds of error have been referred to by counsel in the arguments, we will not notice any except such as are discussed in the briefs.

Appellants' counsel make this statement in their brief: " It would seem that the Evening Star was a later location than the Wheeler, which was, therefore, a valid and subsisting claim at the date of the lease, and would have remained a valid and subsisting claim, and this controversy never arisen, if the owners of the Wheeler had prevented the owners of the Evening Star from obtaining a patent. That proceeding was in the nature of a judgment

rendered in favor of the Evening Star, and against the Wheeler, declaring the Wheeler location null and void."

There is no contention regarding the first sentence quoted, but there is as regards the second. In fact, it is the turning point of the case, and if resolved against the appellants it follows that the judgment must be affirmed, provided the ouster of the plaintiff by the defendants, found by the court, warrants the restoration of possession to plaintiff.

The appellants' position, stated in detail is, that the plaintiff, by failing to protest the application for a patent of the Evening Star, which included within its exterior boundaries as officially surveyed the original discovery point of the Wheeler claim, lost all of its rights under the prior and valid location of the Wheeler claim, not only to the portion of said claim included by the Evening Star claim, but also to the portion lying outside of the same, and that such outside portion became subject to location as a part of the unoccupied public lands of the United States, notwithstanding, as shown by the evidence and found by the court, long previous to said application for a patent, a new discovery of ore had been made on the Wheeler lode outside of the Evening Star claim. The following findings on this point are fully supported by the evidence; to wit:

"That the discovery made upon said mining claim (the Wheeler), as hereinbefore mentioned, was at a point designated upon the plot marked " Exhibit G," and hereunto annexed and made a part of these findings, as " Old Discovery Shaft," upon said plot appearing to be within the boundary lines of the surface of the claim designated as the " Evening Star " survey 3382; but in fact, at the time of said discovery, and until about the 5th day of August, A. D. 1898, as hereinbefore mentioned, the

same was without the surface boundaries of said Evening Star survey, and within the boundaries of the said Wheeler claim. * * * That on or about the month of October, 1891, the predecessors in interest of plaintiff corporation made, claimed, and appropriated a new discovery for said Wheeler lode and claim, at a point designated on plot G as Shaft House, New Discovery, upon the same vein, or lode, originally discovered as hereinbefore mentioned; and thereafter the said mining claim was worked and developed through a shaft sunk at said point, and all the work thereon done or performed by the plaintiff corporation or its predecessors in interest was done and performed on said vein at said point and through said shaft. That the said vein, containing mineral and pay ore, could be readily traced upon the surface for the most of the way from the point marked "New Discovery" to and into the Evening Star ground at the point marked "Old Discovery," and at the time of making the said new discovery as hereinbefore mentioned, mineral and rock in place bearing gold and other metals was found and existed at said point marked "New Discovery," and within the surface boundaries of said claim as theretofore staked and marked upon the ground."

The new discovery mentioned in said findings is situated within the exterior boundaries of the Wheeler claim as originally located and marked by monuments and stakes upon the ground and a considerable distance outside of the Evening Star claim as surveyed for patent.

Appellants' counsel cite the following cases in support of their position: *Gwillim* v. *Donnellan*, 115 U. S., 45; *Miller* v. *Girard*, 3 Colo. Ct. of App.. 278; 33 Pac., 69; *Girard* v. *Carson*, 22 Colo., 345.

In the case of *Gwillim* v. *Donnellan*, *supra*, the facts were different from the facts in the case at bar. Chief

Justice Waite, in the opinion sustaining the instruction objected to in that case, stated the facts as follows:

" The plaintiff, in presenting his case to the jury, stated in effect that after the location of the claim by Thomas, and before his conveyance to the plaintiff, one Fallon instituted proceedings to obtain a patent from the United States for another claim, including that part of Thomas' claim wherein was situated the discovery shaft sunk by him; but no adverse claim was interposed, and Fallon accordingly entered his claim and obtained a patent therefor; and, before any new workings or developments done or made by Thomas upon any part of his claim not included in the patent, the defendants entered therein and located the same as a mining claim in the public domain. Upon this statement the court ' ruled that, inasmuch as that part of the claim of said Thomas, wherein was situated his discovery shaft, had been patented to a third person, the plaintiff was not entitled to recover any part of the premises, and instructed the jury to find for the defendants.' This instruction is assigned as error. Thomas made his location as the discoverer of a vein, or lode, within the lines of his claim. He made but one location, and that for fifteen hundred feet along the discovered vein. All his labor was done at the discovery shaft. There was no claim of a second discovery at any other place than where the shaft was sunk."

In the case of *Miller* v. *Girard, supra*, the facts were similar to the case decided by Chief Justice Waite. In the opinion, the court said:

" It was not established that the owners of the Long John had sunk any other discovery shaft within the limits of their claim prior to the location of the Aurora and Elgin, which would amount to a compliance with the State and federal statutes in this particular. There was enough

proof in the case in respect of these matters to entitle the appellants to a finding by the jury on this subject, under an instruction which should aptly state the law respecting it. Ever since the decision of the case of *Gwillim* v. *Donnellan*, 115 U. S., 45; 5 Sup. Ct. Rep., 1110, it has been the conceded and established law that if a locator permits an adjoining claimant to obtain a patent from the government for that portion of his territory which includes his discovery shaft, and he is without another which gives him a superior right as against the contesting claimant, he must be adjudged to have lost title to whatever territory is embraced within the limits of his claim."

In the case of *Girard* v. *Carson*, *supra*, the same rule is announced, and the case *Gwillim* v. *Donnellan*, *supra*, is cited in support of the same.

Counsel in their brief attach much importance to the case of *Girard* v. *Carson*, but this case does not differ from the other cases, except that it is not stated that no other discovery of mineral had been made on the defeated claim outside of the patented claim, previous to the issuance of the patent and the location of the junior claim. Neither does it appear that any such discovery was made.

In a line with these decisions the Land Department holds that " patent will not issue on an application that expressly excludes therefrom the land upon which is situated the discovery shaft and improvements, and where the proof fails to show the discovery of mineral on the claimed ground." Lone Dane Lode, 10 Land Dec., 53; Cayuga Lode, 5 Land Dec., 703; *In re* J. E. Kennedy, 10 Copps L. O., 150.

Where the original discovery point embraces all of the lode, or vein, actually discovered, and the apex of which is not known to exist elsewhere, such a result necessarily follows, because under the provisions of Sec. 2322, Rev.

Stat. of the United States, a locator of a mining claim is only entitled to the exclusive right to the possession and enjoyment of such portions of the lodes, or veins, the top, or apex, of which lie within the exterior boundaries of the claim, and where the locator allows another to patent the discovery point which includes all of the known apex of the only vein discovered, or by conveyance or otherwise parts with his title, an entry can not be made of the residue of the claim, because proof can not be made that any vein, or lode, having its apex within the ground sought to be entered, exists or has been discovered, and in the absence of such proof there is no basis for any claim, either to surface ground or a lode, vein, or deposit of mineral under the mining law.

In the case at bar the evidence shows that at the point of the original discovery of the Wheeler claim, the only development made was an excavation about nine and one-half feet deep two and four tenths feet within the southwest side line of the Evening Star, as surveyed for patent. From said point the vein was traceable on the surface five hundred feet; that the vein was on the surface all the way from said point to the new discovery shaft and could be traced upon the surface, and at places between these points was stripped and opened; that at the new discovery point there had been sunk, previous to February, 1892, a shaft, on the main vein, one hundred feet deep, and at that date a contract was let to one Johnson, by the owners of the Wheeler mine, to sink said shaft one hundred feet deeper, which he performed, and in doing so extracted some ore; that the improvements on the Wheeler claim consisting of a shaft house, a blacksmith shop, and a whim house, were situated at or near said shaft; and said shaft and improvements were situated on the Wheeler claim, outside of the Evening Star claim, and about five hundred feet from the

point of the original discovery, in a northeasterly direction therefrom.

As these facts clearly show the existence and development of a vein, or lode, of mineral, the apex of which is within the exterior boundaries of the Wheeler claim outside of the Evening Star claim, and that the existence of such vein or lode was ascertained and developed previous to the application for a patent by the Evening Star claim and the inception of the Little Clarissa under a location ·which appellants admit was valid up to the expiration of the sixty days' period of publication of the notice of such application, the case at bar is not within the reason of the rule announced in the case of *Gwillim* v. *Donnellan*. *supra*.

The Land Department holds that where a portion of a claim embracing the original discovery is lost, or is waived or omitted from the application, a patent will be issued for the balance, provided that the vein has been discovered and developed in the portion of the claim not omitted. Secretary Teller to Commissioner, 1 L. D., 593.

The Commissioner of the Land Office having asked the secretary this question: " Did the waiver of the discovery shaft and the portion of the lode within the Kangaroo survey, by failure to file an adverse claim have the effect to vitiate the entire Metropolitan location and bar an application for any part of the same ? " the secretary in answer said: " On the first point I am of the opinion that the development and possession of the lode, so far as it runs upon public land, was not interfered with in any manner by the waiver of a portion, even though the original discovery shaft was included in the portion disposed of. The continued possession and working of such outside portion under the original ownership and location ought ·not to be held as forfeited while the good faith of the owner ·

toward the United States is not impaired; and opportunity should not be given to a stranger to appropriate under United States laws the property and improvements which he has acquired and made upon a good and sufficient location properly asserted at the time of the original discovery.

"Section 2326 of the Statutes recognizes portions of claims as entitled to patent, and the issue of separate patents on such portions as adverse parties may rightfully possess. Assignment of any interest whatever in these mining possessions has been declared valid by the supreme court, even by a parol transfer without a written instrument.

"If the existence of the lode be shown beyond the lines of the conflicting survey, and application be made for patent, it would seem to work a complete abrogation of a property and statutory right to deny a patent thereon because of a sale or surrender of some other portion of the lode originally embraced in the discovery and location." See also Spur Lode, 4 L. D., 160; Cayuga Lode, 5 L. D., 703.

The views of Secretary Teller are supported by an opinion of Judge Hallett, in the case of the *Little Pittsburgh* v. *Amie*, 17 Fed. Rep., 57. In that opinion it is said: "This position appears to be to the effect that one who owns a mining claim must at all events hold on to his discovery shaft until he has obtained a patent for his claim. If he yields it to another in any way, by conveyance or otherwise, he thereby abandons his claim. I do not see upon what principle such a conclusion can rest. After a claim has been properly located, the owner of it may sell any part without prejudice to his right to hold the remainder. He may dispose of it by gift or grant in any way which seems proper to him."

If a mining claim, as in practice most of them are, is

held by tenants in common, under the laws of most, if not all, of the mining States, they may petition for partition. If upon partition of a claim a portion should be set off to one of the parties, on which the original discovery was not located, under the rule insisted upon by appellants, he would lose all of his rights notwithstanding the lode might exist and have been developed and worked through the whole length of the claim.

The cases upon which the appellants rely do not sustain their contention, because the facts involved in them were radically different from the facts in the case at bar.

Chief Justice Waite indicates from the language used in the opinion in the case of *Gwillim* v. *Donnellan, supra,* that if it had appeared that a second discovery had been made at any place on the defeated claim, other than the original discovery which was within the patented ground, the right to the portion of the claim outside of the patent would not have been lost.

The Land Department having established the rule, thus indicated, we are of the opinion that under the facts disclosed by the evidence and findings, the case at bar is clearly within the rule thus established, and no decision, holding a contrary view, having been brought to our notice, it should be followed in this case.

The judgment is objected to by counsel for the appellants, because the appellants were enjoined from working the mine, and possession thereof awarded to the plaintiff before the term of the lease expired.

The defendant lessees forfeited all rights under the lease by the ouster of the plaintiff, and setting up an adverse title in themselves and the co-locators of the Little Clarissa claim.

Taylord on Landlord and Tenant, Sec. 522 and cases there cited.

The court having obtained jurisdiction to determine the rights of the parties, could grant full relief, and restore the possession to the plaintiff.

Appellants contend that the Wheeler claim had been abandoned by the plaintiff, previous to the location of the Little Clarissa claim. On that point the court below properly found for the plaintiff.

The judgment of the court below is affirmed, with costs.

BARTCH, C. J., and MINER, J., concur.