ANDREW KNUDSEN AND ANOTHER, RESPONDENTS, *v.* NIELS OMANSON, APPELLANT.

1. PUBLIC LANDS.—MEANDER LINE.—BOUNDARIES.—The patentee of a fractional subdivision of public lands called lots, bordering on a navigable lake which has been meandered in the government surveys, takes title to all lands below the meander line formed by accretions or relictions of the lake, since the boundary is not the meander line but the water line. *Poynter* v. *Chipman*, 8 Utah, 442 (32 P. R. 690), followed.

2. ID.—ID.—ACCRETIONS.— RIPARIAN OWNER. — VESTED RIGHT. — The United States granted a patent without restriction or reservation, to public lands bordering on a navigable lake. The lands were described as lots or fractional parts of sections extending to the meander line. After the government survey, the gradual subsidence of the lake formed the lands in controversy below the meander line and between the lands as described in the patent and the lake. The lands thus formed were subsequently withdrawn by the land department of the

government from settlement and sale. *Held,* that the grantee under the patent and his successors in interest became riparian owners upon the lake and acquired a vested right to all the land which might be added to the lots patented, by accretion or reliction, with which right the government could not interfere and that the land department in withdrawing the lands acted without jurisdiction.

3. ESTOPPEL IN PAIS.—PLEADING.—EVIDENCE.—Where no estoppel is pleaded or relied on, evidence of a settlement of boundary between plaintiff and a third person is not admissible, as showing the true location of such boundary as against the plaintiff.

(No. 442. Decided June 4, 1894. 37 P. R. 250.)

APPEAL from the district court of the first judicial district, Hon. John W. Blackburn, *Judge.*

Action by Andrew Knudsen and Herman Knudsen against Niels Omanson to quiet title. From a decree for plaintiffs defendant appeals. *Affirmed.*

[The transcript of the record in this case does not show any notice or undertaking on appeal, or any certificate of attorneys or of the clerk of the lower court. But no motion to dismiss on this account was filed by the respondents.—REP.]

*Mr. John W. Judd,* for appellant.

The title which passed from the United States was to the land described in the patent and nothing more. The land occupied by the defendant is public domain and he is entitled to it as against all persons subject to the paramount title of the United States. Revised Statutes United States, §§ 2396, 2476; *McManus* v. *Carmichael,* 3 Ia. 1; *Barney* v. *Keokuk,* 94 U. S. 324; *Haight* v. *Keokuk,* 4 Ia. 199; *Hardin* v. *Jordan,* 140 U. S. 371.

*Messrs. King & Houtz* and *Mr. George Sutherland*, for respondents.

Land formed by alluvium belongs to the proprietor of the adjacent land, whether the waters are navigable or unnavigable. *Warren* v. *Chambers*, 4 Am. Rep. 24; *Weber* v. *Boome Co.*, 62 Mich. 626; *Schurmeir* v. *R. R. Co.*, 10 Minn. 82; *The Magnolia* v. *Marshal*, 39 Miss. 110; *Jeffries* v. *Land Co.*, 134 U. S. 178. The meander line is not a boundary line, but the water, whose body is meandered is the true boundary. *Lamprey* v. *State*, 18 L. R. A. 675; S. C. 53 N. W. R. 1139. The common law definition of "navigability" has been departed from and the United States tribunals hold that the test of "navigability" is navigability in fact without reference to the ebb and flow of the tides. *Hardin* v. *Jordan*, 140 U. S. 371, and cases cited. The courts in New York and New Jersey have held that lakes which answer to the test of navigability, were the subject of private ownership, and that persons owning to the meander line, owned to the center of the water. *Smith* v. *Rochester*, 92 N. Y. 463; *Ledyard* v. *Ten Eyck*, 36 Barb. 102; *Cobb* v. *Davenport*, 32 N. J. L. 369. The courts of Illinois and Mississippi hold that titles of riparian proprietors extend to the middle of the Mississippi river. *Middleton* v. *Pritchard*, 3 Scam. 510; *Morgan* v. *Reading*, 3 Sm. & Marsh, 366. The case of *Poynter* v. *Chipman*, 8 Utah, 442; 32 P. R. 690, is one which squares upon all sides and is decisive of the case at bar.

MERRITT, C. J.:

This action was brought for the purpose of quieting title to about 160 acres of land on the borders of Utah lake, a navigable body of fresh water, in Utah county, Utah territory. The record does not disclose any serious conflict

in the evidence. The facts are substantially as follows: That in 1856 the United States government surveyed the land adjoining the lake. Sections 4 and 9, township 7 S., range 2 E., Salt Lake meridian, including lots 3 and 4 of section 4, and lot 1 of section 9, are designated as fractional, owing to the fact that they adjoin and were partially covered by the lake; and all lying below and west of these lots is represented on the government plats and maps as water. In making the survey the water's edge was approached as nearly as possible, and the west line of these lots is shown by the government surveyors to be waters of the lake, and is what is called "a meander line." The lots in controversy, containing 148.50 acres, were entered as a homestead by one Hans Knudsen about the year 1876, and were subsequently patented to him. The plaintiffs succeeded to their title long prior to the commencement of this action. The lots were bounded on the north by Provo river, a stream of water which empties into the lake.

After the government survey of these lots, the waters of the lake gradually receded, and deposits of soil were made by the lake and the river below the meander line, and the lands in controversy were thus formed. In 1888 there was a strip of such land extending from the meander line of the lots above described, along the south side of Provo river, a distance of about a mile west to the then waters of the lake, varying in width from 20 to 40 rods. Extending south from the west end of this strip of land, almost at right angles, is a narrow sand bar, which divides the waters of the main lake from a smaller body sometimes called "Smith's Lake." Sometimes this sand bar extends a few inches above the water and sometimes it is submerged entirely. Between the meander line of the lots in question and the sand bar is a large body of marsh land, which is of no value except for pasturage. In 1888, the defendant (appellant) entered upon a portion of the

lands in controversy under a lease from the plaintiffs (respondents), paying one year's rental for the same. Thereafter appellant repudiated the lease, and set up a claim to a part of the premises, as well as to other lands formed in the same manner. He committed various acts of trespass upon the lands, and this action was brought to determine the title, and to obtain injunctive relief against a repetition of threatened trespasses. The court below found in favor of the plaintiffs (respondents), and adjudged them to be owners of all the lands lying between the meander line of said lots and the waters of Utah Lake, and enjoined the defendant (appellant) from entering or trespassing thereon. The defendant (appellant) thereupon appealed to this court.

It is claimed by the appellant that the title which passed from the United States by the Knudsen patent was to the land described in the patent, and nothing more; that the land now in controversy is public domain, and the defendant (appellant) is entitled to it as against every one except the United States. We do not think this claim is well founded in law. In surveying fractional parts of the public lands bordering upon lakes or streams, meander lines are run, not for the purpose of establishing a boundary for the land, but in order to determine the quantity of upland to be paid for by the purchaser. A meander line is not a boundary, but the water whose body is meandered is the true boundary, whether it in fact coincides with the meander line or not. *Hardin* v. *Jordan*, 140 U. S. 371, 11 Sup. Ct. 808, 838; *Mitchell* v. *Smale*, 140 U. S. 406, 11 Sup. Ct. 819, 840; *Lamprey* v. *Metcalf* (Minn.), 53 N. W. 1139; *Schurmeier* v. *Railroad Co.*, 10 Minn. 82 (Gil. 59); *Jefferis* v. *Land Co.*, 134 U. S. 178, 10 Sup. Ct. 518; *Palmer* v. *Dodd*, 64 Mich. 474, 31 N. W. 209. It is held by all the authorities, so far as our investigation has gone, that the water's edge, and not the meander line itself, is

the real boundary of the land, and that the owner of the lands so bounded has a right to follow the water as it recedes, and that he is entitled to all lands which may be added by recession or accretion.

In the case of *Hardin* v. *Jordan,* the doctrine is clearly announced by the supreme court of the United States, whose decision is absolutely conclusive on this court, that, whether the body of water is navigable or not, the practical result is the same, the only difference being that in the case of non-navigable waters the riparian owner takes the fee to the center of the lake or stream, while in the case of navigable waters the ownership in fee extends only to the water's edge, but in either case all the accretions and relictions belong to him as an incident of his riparian ownership. The reason generally given for this rule is that, as the riparian owner is likely to lose soil by encroachments of the water, he should also have the benefit of such as would be gained from the same source, and also because it falls within the maxim *" de minimis non curat lex."* The supreme court of Minnesota, in the recent case of *Lamprey* v. *Metcalf, supra,* adds the following: " But it seems to us that the rule rests upon a much broader principle, and has a much more important purpose in view, namely, to preserve the fundamental riparian right, on which all others depend, and which often constitutes the principal value of the land,—of access to the water. The incalculable mischief that would follow if a riparian owner is liable to be cut off from access to the water, and another sandwiched in between him and it, whenever the water line has been changed by accretion or reliction, are self-evident, and have been frequently animadverted upon by courts."

These considerations certainly apply to riparian ownership on lakes as well as on streams. Take the case in

hand, of our small inland lakes, the waters of many of which are slowly, but gradually, receding. The owners of lands bordering on them have often bought with reference to access to the water, which usually constitutes an important element in the value and desirability of the land. If the rule contended for by the appellant is to prevail, it would open the door for prowling speculators to step in and acquire title from the state to any relictions produced in the course of time by the recession of the water, and thus deprive the owner of the original shore estate of all riparian rights, including that of access to the water. The endless litigation over the location of the original water lines, and the practical injustice to the owner of the original riparian estate, that would follow, would of themselves be sufficient reason for refusing to adopt any such doctrine. But, whatever the foundation, the rule itself is too firmly fixed by both reason and authority to admit of successful controversy, and it is a rule both just and salutary. *Hardin* v. *Jordan, supra; Railroad Co.* v. *Schurmeier,* 7 Wall. 288; *Boorman* v. *Sunnuchs,* 42 Wis. 233; *Jeffries* v. *Land Co.,* 134 U. S. 196, 10 Sup. Ct. 518; *Banks* v. *Ogden,* 2 Wall. 67. These are only a few of the many cases which sustain the proposition we have announced, and it would serve no useful purpose to incumber this opinion with further citations. The question was exhaustively reviewed by this court in the case of *Poynter* v. *Chipman,* 8 Utah, 442, 32 Pac. 690, and a conclusion was reached contrary to the contention of the appellant here. Further investigation furnishes us no reason to depart from the decision in that case.

Defendant offered to show by the records of the United States land department that in November, 1891, Utah lake was selected by the government as a reservoir site, and all the land bordering the lake was withdrawn from settlement; that among these was the west half of town-

ship 7 S., of range 2 E., including section 4 and section 9. The court, on the objections of plaintiffs, rejected this evidence, and the ruling is assigned as error. The patent from the government to Hans Knudsen of the lots heretofore described vested the title absolutely in him. The government no longer had any right of control over the lands so patented. His rights, and the rights of his successors in interest, could not be affected by any order withdrawing any lands from settlement and sale. Such an order could only be effective as to lands the title to which still remained in the government. By this patent Knudsen and his successors in interest became riparian owners upon the lake, and acquired a vested right to all lands which might be added to the lots patented by accretion or reliction. This was a right with which the government could not interfere. Without troubling ourselves to consider what were the rights of the United States in these waters before they conveyed the lands bordering on them, it is well settled that, having disposed of lands bordering on a meandered lake by patent, without reservation or restriction, they have nothing left to convey, and consequently the land department was therefore without jurisdiction. *Lamprey* v. *Metcalf* (Minn.), 53 N. W. 1139; *Palmer* v. *Dodd*, 64 Mich. 474, 31 N. W. 209. In addition to this, the controversy here was not between the government and the plaintiffs, but between the plaintiffs and the defendant, a private citizen, and in no way connected with the government title. We think the evidence was wholly irrelevant and immaterial.

Testimony was also offered to show that, prior to the bringing of this suit, some parties were cultivating a portion of the land lying between the meander line of the Knudsen patent and the land claimed by defendant; that a controversy arose between these parties and Knudsen as to where the line was; that this controversy was referred

to one J. D. Jones to arbitrate, and that he settled the meander line of the Knudsen patent as the true line, to which settlement Knudsen assented. The testimony was objected to and excluded. In this we do not think the court erred. The defendant does not in any manner connect himself with the parties to this dispute. His only defense is that the land is public domain of the United States. No estoppel is pleaded or relied upon. *Poynter* v. *Chipman,* 8 Utah, 451, 32 Pac. 690. We find no error in the record, and the judgment of the district court is therefore affirmed.

BARTCH and MINER, JJ., concur.