SMITHFIELD WEST BENCH IRR. CO. v. UNION
CENTRAL LIFE INS. CO. et al. (FIRST NAT. BANK
OF LOGAN, UTAH, et al., Interveners).

No. 7032.   Decided June 25, 1948.   (195 P. 2d 249.)

See 67 C. J., Waters, sec. 407. Right of appropriator of water to recapture water which has escaped or is otherwise no longer within his immediate possession, see note, 89 A. L. R. 210. See, also, 56 Am. Jur., 641.

*Young & Bullen* and *George C. Heinrich,* all of Logan, for plaintiff-respondent.

*Melvin C. Harris,* of Logan, and *Elias Hansen,* of Salt Lake City, for defendants, cross-complainants and appellants.

*L. Tom Perry,* and *Nowell G. Daines,* both of Logan, for interveners, cross-complainants, and appellants.

*George D. Preston,* of Logan, for cross-defendant and respondent.

McDONOUGH, Chief Justice.

This action was commenced by the Smithfield West Bench Irrigation Company against Union Central Life Insurance Company and others to quiet title to certain waters accumulating in the canal of the Logan Northern Irrigation Company near a point known as Gunnell Flume. At the first trial of this matter the district court quieted title in the plaintiff and enjoined defendants from interfering with plaintiff's use thereof. Upon an appeal from this judgment this court reversed the judgment of the district court in an opinion reported in 105 Utah 468, 142 P. 2d 866, 870.

Three separate opinions were written on the former appeal. All Justices, however, concurred in the order of reversal which was in the following language:

"The judgment is reversed with leave to the parties to amend their pleadings if desired and to offer further evidence showing any interest in these waters in harmony with the views herein expressed and then to enter judgment accordingly."

The matter was remanded to the district court for further proceedings. Thereafter on motion of the defendants the Logan Northern Irrigation Company, a corporation, was joined as a party defendant. At the beginning of the trial it was stipulated by the parties that the evidence adduced at the first trial should be received in evidence at the second trial. Logan Northern Irrigation Company objected to the admission in evidence of the previous proceedings but that objection is of no materiality here.

The plaintiff offered, and there was received in evidence, a certificate of stock for two shares of capital stock in the Logan Northern Irrigation Company in favor of the plaintiff, which certificate was dated March 17, 1943. Plain-

tiff also introduced in evidence the Articles of Incorporation of the Logan Northern Irrigation Company. The defendants offered in evidence three shares of stock in the Logan Northern Irrigation Company, and various other evidence relating to the ownership of stock in Logan Northern Irrigation Company. Defendants also offered a certified copy of an application to appropriate water which had been made by one Daines and assigned to the defendants and interveners. However, while the application was received in evidence, the allegations relative thereto in the supplemental complaint and cross-complaint of defendants and interveners had been theretofore stricken upon motion of plaintiff. Hence, no issue was before the court relative thereto, and no finding was made in regard thereto. The ruling of the trial court striking such allegations is the basis of one of the assignments of error of appellants. Thereafter, Logan Northern Irrigation Company and defendants and interveners entered into a stipulation settling all differences as among themselves. The plaintiff was not a party to the stipulation. On this evidence the district court again entered judgment quieting title in the plaintiff as against all of the defendants including Logan Northern Irrigation Company, and against the interveners. This appeal is taken from that judgment.

The stipulation referred to in the preceding paragraph, stipulated insofar as here relevant:

"That the Logan Northern Irrigation Company is the owner of all waters flowing in the Logan and Northern Irrigation Company canal accumulated from every source whatsoever and it is not obligated to permit any water to reach the point commonly referred to as the Gunnel Flume or Hillyard Lane in Cache County in excess of the proportion to be delivered by it as an irrigation company to stockholders of the company diverting their water at or below the said point, provided that any water which reaches the Gunnel Flume to which no stockholder is entitled, may be used by the defendants and interveners in performance of the contract dated October 4, 1928, between Logan and Northern Irrigation Company, a corporation, party of the first part and A. M. Smith, Alton J. Carson and Melrose A. Carson, parties of the second part.

\*     \*     \*     \*     \*

"And provided further that the Logan and Northern Irrigation Company shall not, at any point for a distance of one mile on its said canal above and south of the Gunnel Flume, wilfully divert any water for the purpose of preventing the same from reaching the Gunnel Flume, except that to which the stockholders, their lessees, assignees or representatives, are entitled to receive, and provided also that the defendants and interveners and their successors in interest shall keep the canal of the Logan and Northern Irrigation Company clean in accordance with irrigation practice for the distance of one-half mile south and above the Gunnel Flume, more or less to the Baugh Beet Dump.

"Provided further that neither of the defendants or interveners, or their successors in interest, will interfere, control or manipulate the water and diversion or control works at the said Gunnel Flume without the consent of the Logan and Northern Irrigation Company, or its authorized agents; but nothing contained in this paragraph shall in any way alter or affect the obligation devolving upon the defendants or interveners as set forth in said contract dated October 4, 1928. * * *"

The diverting works and the waters in question are described in the former opinion of this court. The facts will be repeated here only as necessary to an understanding of the issues on this appeal. The waters in question all accumulated in the canal of the Logan Northern Irrigation Company, hereinafter sometimes called Logan Northern. The water so accumulated came from three sources, to-wit: (a) excess waters of the Logan Northern diverted from Logan river and not distributed to its stockholders; (b) waste waters flowing from surface irrigation off lands above the canal and (c) seepage waters from lands above the canal seeping into the canal.

On the former appeal the plaintiff based its claim of title upon a decreed right fixed by the Kimball Decree and upon use adverse to the original defendants dating back to 1885. All of the evidence concerning the right claimed under the decree entered in the case of *Utah Power and Light Company* v. *Richmond Irrigation Co. et al.*, (Kimball Decree) was before this court on the former appeal. In the main opinion, written by Mr. Justice Larson and concurred in by Mr. Justice Moffat, it was stated that the

plaintiff did not seriously insist that it had a decreed right to the water. In the concurring opinion, written by Mr. Justice Wolfe (then Chief Justice) and concurred in by the writer, it was concluded that on the evidence then before the Supreme Court title could not be quieted in the plaintiff. Further, by a concurring opinion written by Mr. Justice Wade, it was concluded that the Kimball Decree, upon which the plaintiff relied, decreed these waters to the Logan Northern Irrigation Company. Therefore, the entire court agreed that upon the evidence thus submitted by the plaintiff, the plaintiff had failed to prove title to the waters based upon said decree. Since the decree was before the Supreme Court on the former appeal in exactly the same form as it was before the district court at the second trial, we cannot escape the conclusion that it was established on the former appeal as the law of the case that the plaintiff could not claim title to this water under the Kimball Decree. Furthermore, while the court below made a finding to the effect that in the Kimball Decree certain "spring waters" were decreed to plaintiff no finding was made to the effect that the waters so decreed are the waters here involved nor is there any evidence in the record to such effect.

In the first trial of this matter in the district court, and on the first appeal, the plaintiff also, as noted, relied on the title by adverse use. This court concluded on the former appeal that the possession of the water was a scrambling possession and that the plaintiff had failed to prove title by adverse use.

No contention was made in the pleadings of the plaintiff on either the first or the second trial that title to the water had been conveyed to the plaintiff by Logan Northern. For this reason alone a claim of title based on asserted conveyance must fail. Notwithstanding the fact that no such conveyance is pleaded the district court on the second trial concluded that the plaintiff had acquired the right to use these waters by virtue of a contract between the plaintiff, Logan Northern Irrigation

Company and Cache County, made in the year 1938. This contract was in evidence at the first trial and on the former appeal. This court held on the first appeal that upon such evidence the plaintiff had failed to show title to the water and we consider this holding also to be the law of the case, binding upon this court and the lower court as well. See Tanner v. Provo Reservoir Co., 108 Utah 93, 157 P. 2d 271.

Plaintiffs introduced no new evidence to show that it had acquired any title to this water by any new conveyance not in evidence at the first trial. There is also no evidence that plaintiff has attempted to make a new appropriation of this water. Three of the justices of this court on the former appeal definitely concluded that the waters in question were the waters of the Logan Northern Irrigation Company, while two other members of the court refused to decide this question because of the fact that Logan Northern Irrigation Company was not at that time a party to the suit. The holding by the other three justices is unmistakably clear. Mr. Justice Larson said:

"From what has been said it follows that the waters in the Logan Northern Company Canal at Gunnell's Flume, and involved in this action, are the waters of the Logan Northern Company or the joint waters of the Logan Northern Company and the shareholders in the Logan Northern Canal, who did not join the Logan Northern Company, if any there be, or their successors in interest."

Mr. Justice Wade said:

"In 1922, in the case of Utah Power and Light Company v. Richmond Irrigation Co., to which action both plaintiff and the Logan Northern Irrigation Co. were parties, a general adjudication of the rights to the use of the waters of Logan River was made. In that action plaintiff was awarded no right to the use of waters diverted from the Logan River through the Logan Northern Canal and it is therefore barred from asserting such right now."

Even though it should be held that it has not already been determined as the law of the case that these waters in the Logan Canal at Gunnell's Flume are the waters of

Logan Northern, still the plaintiff could not succeed. It is well established under the authorities cited in our previous opinion that waters diverted from a natural source, applied to irrigation and recaptured before they escape from the original appropriator's control, still belong to the original appropriator. If the original appropriator has a beneficial use for such waters, he may again reuse them and no one can acquire a right superior to that of the original appropriator.

Under well established principles of law it must then be concluded that the waters which are collected in Logan Northern Canal belong to Logan Northern. This was decided by this court on the former appeal of this case and even if such a holding were not considered to be the law of the case, we could so hold again. The plaintiff does not plead nor has it proved an abandonment on the part of Logan Northern. It is axiomatic that one who claims that there has been an abandonment must allege and prove it. Further, even had it been shown by the plaintiff that Logan Northern had abandoned this water, plaintiff has not proved any statutory appropriation of the water since 1922, the time of the Kimball Decree.

This brings us to the problem of the claimed conveyance under the contract executed in 1938 by the plaintiff, Logan Northern and Cache County. We have already indicated that we now consider it to be the law of the case that this contract will not support a decree quieting title in the plaintiff. Our conclusion in that regard is based upon a statement made in the opinion written by Mr. Justice Larson, as follows:

"* * * it follows that all the waters in the Logan Northern Canal at Gunnell's flume are the waters of Logan Northern Company against whom neither the West Bench (plaintiff) nor appellants, have acquired any rights, * * *."

And the statement by Mr. Justice Wolfe, that:

"The evidence adduced thus far would not permit the entry of a decree quieting title in either the plaintiff or the defendants."

Since these conclusions, evidenced by the above quotations, were reached by this court, even though the contract now relied upon was then in evidence and considered by us, we must hold the same way on the same evidence.

We also have indicated that the plaintiff may not now base its claim to title upon a conveyance from Logan Northern because of the fact that the plaintiff has not alleged such a conveyance. If we were to disregard the failure of the plaintiff to plead such a conveyance and also to disregard the holding on the former appeal, it is difficult to see how plaintiff could win on its present argument. Plaintiff argued that Logan Northern had no interest in the water after it was discharged at Gunnell's Flume except that of seeing that the water did no damage to adjacent landowners as the water sought lower levels. If this is correct, then at the time the waters were discharged at Gunnell's Flume, plaintiff's only interest was that of getting rid of the water. Certainly this interest alone would not be sufficient to sustain a conveyance. Such was the holding of the court in *Vaughan* v. *Kolb,* 130 Or. 506, 280 P. 518. In that case the owner of the water discharged it without any intent of recapturing the water or placing the same to beneficial use. The quotations from that case, set forth in Mr. Justice Wolfe's opinion on the former appeal demonstrate correctly that an appropriator having so discharged the water has no interest in the water sufficient to support a conveyance. In this regard see also the Utah case of *Manning* v. *Fife,* 17 Utah 232, 54 P. 111. It must be concluded that the plaintiff cannot recover on the contract of 1938.

We must, therefore, conclude that the trial court has erred in entering a judgment in favor of the plaintiff. This leaves for our determination the matter of whether or not the court should have quieted title in the defendants. The argument of the defendants (appellants) that the matters determined by this court on the former appeal are the law of the case as against the plaintiff applies as well to them. On the former hearing we held that on the evidence

presented there was not sufficient evidence to permit a decree quieting title in the defendants or in the plaintiffs. The only additional evidence adduced by the defendants was evidence of certain stock ownership and a certified copy of the application to appropriate water, which applicant was made by Daines and assigned to defendants and interveners. If it is to be held that these waters are owned by Logan Northern Irrigation Co., then the only rights of any of the parties claiming through said company is the stock ownership rights proved at the trial, together with any rights which Logan Northern Irrigation Co. gave to the defendants by the stipulation filed at the time of the trial.

The previous holding that it has been established as the law of the case that these waters are owned by Logan Northern Irrigation Co. must stand as against both appellants and respondents. Had either of said parties alleged and proved that Logan Northern had intended to relinquish all control over this water after it was discharged from Gunnell's Flume then it well might have been that the principles set down in the case of *Vaughan* v. *Kolb*, supra, would have control and the application to appropriate now allegedly owned by defendants and interveners might have initiated title to these waters. Abandonment has, however, neither been alleged nor proved. This court in view of this has held that the waters belong to Logan Northern Irrigation Co. The plaintiff has failed to show any privity of interest with Logan Northern except that of a stockholder, and title cannot be quieted in the plaintiff. The defendants, the interveners, and Logan Northern have settled their differences by a stipulation. That stipulation should control.

Respondent, however, contends that since such stipulation, set out hereinabove, affirmed in defendants and interveners such rights to water as were intended to be recognized by the contract of 1928, referred to therein, that its effect was merely to recognize defendants' and interveners' right to convey its Logan Northern water across the wash in the manner provided by the contract. The lower court

so found. The contract on its face merely gives to defendants the right to erect the flume referred to in the former opinion in order to conduct such waters as defendants might have then been entitled to across the wash at Hillard's Lane and across the lane. The contract was in evidence at the time of the former appeal. While there was then testimony in the record elicited from officers of the Logan Northern Canal Co. that it was orally agreed at the time of the execution of the contract that the predecessors in interest of defendants and interveners were to receive such surplus waters as reached the Gunnell Flume, in consideration of undertaking its erection and maintenance as therein provided, appellants are confronted by the rule of the law of the case as to the effect of such contract to the same extent as are respondents in respect of the contract of 1938.

But the stipulation must be construed in light of the situation at the time of its execution. Subsequent to remittitur upon the former appeal, after Logan Northern had been made a party to the litigation, plaintiff and respondent filed a cross-complaint whereby it sought to quiet ██ its title to the waters in question against Logan Northern. This cross-complaint was dismissed upon motion of Logan Northern, thus leaving no issue as between it and respondent. Appellants had filed a cross-complaint against Logan Northern whereby they sought to quiet title to the water involved as against the said Logan Northern. In such situation Logan Northern stipulated that

"any water which reaches the Gunnell Flume *to which no stockholder is entitled,* may be used by defendants and interveners in performance of"

the contract of 1928. (Italics added.) Said company further agreed not to wilfully divert any water at any point for a distance of one mile south of Gunnell Flume, except that to which their stockholders are entitled for the purpose of preventing it from reaching Gunnell Flume. Further, appellants thereby agreed to keep the canal of Logan Northern clean for a distance of one-half mile south of the flume.

It is abundantly clear that the Logan Northern which on the former appeal was held to be the owner of the water, intended to grant more than a right to appellants to transport the water represented by shares of stock across the wash; that it definitely gave them the right to use the water of such company which reached the flume in excess of the amount required to supply its stockholders.

Judgment must be entered against the plaintiff and in favor of the defendants, the interveners, and Logan Northern Irrigation Co. in accordance with their stipulation. Such is the order of this court and the matter is remanded for entry of judgment accordingly.

PRATT, WOLFE, WADE and LATIMER, JJ., concur.